**In re KAN–AG GRAIN TERMINAL COMPANY, Debtor.**

**Lew ESKEW, Trustee, Plaintiff,**

v.

**William WARNER, d/b/a General Farms Company, Defendant.**

Bankruptcy No. 86–01802–S–2–11.

Adv. No. 88–0049–S–2–11.

United States Bankruptcy Court, W.D. Missouri.

May 13, 1988.

John R. Stonitsch, Kansas City, Mo., for trustee/plaintiff.

Charles R. Wilson, Overland Park, Kan., for defendant.

MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This adversary action by the Trustee seeks to recover an alleged preference paid by debtor to defendant for 40,000 pounds of fescue seed, and raises the ever troublesome (since 1984) question of how long after delivery can payment be made and still be considered "made in the ordinary course of business or financial affairs of the debtor and the transferee; and made according to ordinary business terms". Prior to 1984 Congress had provided the convenient yardstick of 45 days, but with the 1984 Amendments substituted only the foregoing criteria which credit managers applauded until they painfully realized that 45 days had provided a safe harbor for many otherwise somewhat late payments. It seems thus that there is no easily defined parameter or guideline and that the Court must wrestle with each fact situation on its own. However, this Court suggests that the Congressional Amendment was intended as an amelioration or extension of the 45 day rule inasmuch as that was the avowed intent of both the Commercial Law League of America and the National Association of Credit Management when they suggested, sponsored and shepherded the change through Congress.

Based on that assumption alone, the Court would probably rule in favor of the defendant. However, there are other reasons to buttress the Court's decision in this matter. Defendant had one three part contract to deliver 120,000 pounds of K31 fescue seed. It constituted their only business dealings. The first 40,000 pounds was to be picked up in September and paid for

30 days later. That portion was actually picked up on October 26, 1985, and paid for on November 29, 1985, or 34 days later. The second 40,000 pounds was to be picked up in February and paid for 30 days later. This portion also of 40,000 pounds (the part in controversy) was actually picked up on March 20, 1986, by Herrod Seed Company the debtor's buyer, on March 20, 1986 and paid for by Herrod's check of April 29, 1986, or 39 days later. The Trustee theorizes that the fact that Herrod's check was endorsed over to defendant by debtor was not usual or "in the ordinary course" of business affairs as well as being beyond the 30 day terms. The third shipment never was made because of debtor's and the seller's agreement.

The Court does not agree with the Trustee. Herrod picked up and was the user of the seed. Herrod paid 39 days later and debtor simply turned over the check as an easy way to conclude the transaction. Debtor's expert on custom of the trade evinced no surprise over such an event and indicated that no one in the fescue business considered payment late until some fifteen (15) days past the usual 30 day terms had come and gone. As one of the witnesses said: "Everybody plays the float" and you always hear that: "the check is in the mail", but nobody pays within thirty days. Additional proof thereof may be discerned from the fact that Herrod issued its check 11 days later under the terms. In all, defendant actually received payment 41 days after Herrod picked up the seed. The Court finds that it is the custom and ordinary course of business in the grain and seed brokerage business to pay ten to fifteen days late and concludes that the 11 U.S.C. § 547(c)(2)(A)(B) and (C) exception has been proved by defendant. The Complaint is, therefore, ruled against the Trustee.

SO ORDERED.

This Opinion shall constitute Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.